J-S11039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN COUSINEAU | : | |
| | : | |
| Appellant | : | No. 232 WDA 2025 |

Appeal from the Judgment of Sentence Entered January 31, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001291-2021

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED: June 9, 2026**

Appellant, Sean Cousineau, appeals from the judgment of sentence of

an aggregate term of 44 to 88 months' incarceration followed by 6½ years'

probation, imposed during resentencing after the revocation of his probation.

Upon careful review, we affirm.

The trial court summarized the procedural history of Appellant's case,

as follows:

> [Appellant] was originally sentenced on June 1, 2023, following
> the entry of his negotiated plea to Count 2 — Stalking (F3), Count
> 3 — Criminal Trespass (F3), and Count 4 — Simple Assault (M2),
> in exchange for the Commonwealth's agreement to withdraw
> Count 1 — Burglary (F1) and Count 5 — Disorderly Conduct (S).[1]
> Sentencing was left to the discretion of the court.  … [Appellant]
> was sentenced to a period of 7 years of probation at Count 2,
> which was ordered to commence upon his release from

---

[1] 18 Pa.C.S. §§ 2709.1(a)(2), 3503(a)(1)(i), 2701(a)(1), 3502(a)(1)(i), and
5503(a)(1), respectively.

incarceration. At Count 3, … [Appellant] received another 7-year period of probation, which was ordered to run concurrently with Count 2. At Count 4, … [Appellant] was sentenced to a period of 12 [to] 24 months['] incarceration, granted credit for time already served, [and] paroled forthwith….

In an effort to rehabilitate … [Appellant] and protect the victim, probationary conditions were imposed, including … that … [Appellant] participate in and complete a drug and alcohol treatment program, … undergo a mental health evaluation and comply with all recommended treatment, and … successfully complete the Batterer's Intervention Program ("BIP"). The court also ordered that … [Appellant] submit to random drug testing, and it imposed a "zero tolerance policy" for illegal substance use. A no-contact order was imposed, prohibiting … [Appellant] from having any contact whatsoever with the victim, Orlando Valdiserri [henceforth "the victim"]. This order was explained in great detail to … [Appellant], as were the consequences should he choose to violate it. A post-sentence motion subsequently was filed, heard, and denied. No appeal was filed thereafter.

On October 6, 2023, just four (4) months into his 7-year probationary sentence, … [Appellant] had contact with [the victim], violating a Protection from Abuse ("PFA") order that was also in place at the time. As a result of the PFA violation, … [Appellant] was convicted on November 29, 2023, of Indirect Criminal Contempt ("ICC") at OTN R916167-0. He was sentenced by a different judge to 27 days in the Allegheny County Jail with a 5 month and 3-day probationary tail. … [Appellant] was once again ordered to have no contact with [the victim].

… [Appellant]'s contact with [the victim] on October 6, 2023, clearly violated [the trial] court's thorough no-contact order. On February 2, 2024, a *Gagnon II*[2] violation hearing was held to address … [Appellant]'s probation violation. During the hearing, the [trial] court learned … [Appellant] also had been charged with [I]ndecent [E]xposure and [O]pen [L]ewdness at OTN R916467-6 for an incident … "where … [Appellant] was stroking his penis and urinating and defecating on a porch and apparently wiped himself with the U.S. mail." The charges were resolved as a summary Disorderly Conduct. [The trial] court found …

_____

[2] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[Appellant] to be in violation of his probation, deferring sentencing to obtain a pre-sentence investigation report ("PS[I]").

In the months that followed, … [Appellant] acquired two (2) additional sets of criminal charges before [the] court. At [Docket] No. 2024-2307, … [Appellant] was charged with Harassment, Conspiracy, and Simple Assault for an incident involving "an attack on another inmate in the Allegheny County Jail." The offense date for this incident was March 8, 2024, just a month after [the trial] court's February 2024 *Gagnon II* hearing. [Appellant] ultimately pled guilty to a summary Harassment on December 13, 2024, and he was sentenced to 15 [to] 30 days' incarceration, which was a time-served sentence.

Additionally, at [Docket] No. 2024-4898, … [Appellant] was charged … for his attempt to purchase a firearm. Although the[] charges were not filed until May 30, 2024, the offense date for this crime was July 31, 2023, just a month after … [Appellant]'s original plea and sentencing before [the trial] court in June of 2023. … [Appellant] pled guilty to the [charge of] Unsworn Falsification (M2), and [the trial] court sentenced him to 2 years' probation on December 13, 2024.

By the time … [Appellant] appeared at his resentencing hearing on January 31, 2025, he stood before [the trial] court with [four] new cases: (1) the ICC conviction stemming from his violation of the PFA order; (2) the summary Disorderly Conduct conviction stemming from the indecent exposure incident; (3) the summary Harassment conviction stemming from the inmate assault; and (4) the misdemeanor Unsworn Falsification conviction stemming from his attempt to purchase a firearm. He also violated the terms of his probation by violating [the trial] court's no-contact order.

After considering the case history, … [Appellant]'s substantial non-compliance with the terms of his probation, and the relevant statutory factors, the [trial] court revoked … [Appellant]'s probation and resentenced him in the aggravated range at Count 2 to a period of 27 [to] 54 months of imprisonment, with a 2½ year probationary tail. At Count 3, … [Appellant] was resentenced to a period of 17 [to] 34 months of imprisonment, which was ordered to run consecutively to Count 2. He [also] received a 4-year term of probation which was ordered to run consecutively to the probation term at Count 2. No further penalty was imposed at Count 4. … [Appellant]'s total aggregate sentence was 44 [to] 88 months of imprisonment, with a 6½ year probation[ary] term

- 3 -

to follow. However, the sentence at Count 3 functionally was a time-served sentence because … [Appellant] was awarded 425 days of credit at that count.

[The trial] court imposed another no-contact order against … [Appellant], once again prohibiting him from having contact with [the victim]…. … [Appellant] was ordered to undergo evaluations for drug and alcohol treatment, as well as mental health treatment, and he was to successfully complete any treatment that was recommended by those evaluations. … [Appellant] was deemed to be RRRI ineligible, and the [Commonwealth] objected to … [Appellant]'s participation in the State Drug Treatment Program.

Trial Court Opinion ("TCO"), 7/9/25, at 1-5 (unnecessary capitalization and citations to the record omitted; some formatting altered).

On February 6, 2025, Appellant filed a post-sentence motion for modification of sentence which was denied by the trial court on February 7, 2025. Appellant filed a timely notice of appeal on February 27, 2025. Appellant and the trial court both complied with Pa.R.A.P. 1925.

Appellant now presents the following two issues for our review:

I. In revoking and resentencing [Appellant] to, *inter alia*, state prison, whether the trial court committed an abuse of discretion because it ignored his personal history, character, and treatment and rehabilitative needs, in violation of 42 Pa.C.S.[] § 9721(b)?

II. In revoking and resentencing [Appellant] to, *inter alia*, state prison, whether the trial court committed an abuse of discretion because it focused solely on the seriousness of his violation conduct, in violation of [Section] 9721(b)?

Appellant's Brief at 6 (some formatting altered).

Appellant's issues both implicate the discretionary aspects of his sentence and, as such, we address them simultaneously.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v.***

- 4 -

> ***Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
>> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)…. Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003)….
>
>> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, the issues raised by Appellant were properly preserved in a post-sentence motion, and he filed a Rule 2119(f) statement. In his Rule 2119(f) statement, Appellant alleges a substantial question is raised as the trial court "failed to consider his personal history, character, and treatment and rehabilitation, as well as imposed sentence based solely on the seriousness of his violation conduct, in violation of Section 9721(b)." Appellant's Brief at 19.

- 5 -

This Court has held a claim that a sentencing court "sentenced a defendant without taking into account his or her character and background … raises a substantial question that the sentence is inappropriate under the Sentencing Code." *Commonwealth v. Luketic*, 162 A.3d 1149, 1162 (Pa. Super. 2017). This Court has also held "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (quoting *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009)); *see also Commonwealth v. Knox*, 165 A.3d 925, 929 (Pa. Super. 2017) (concluding an appellant's "claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances, such as his mental health history and difficult childhood, raises a substantial question").

Finding Appellant has raised a substantial question and satisfied all requirements under *Evans*, we grant his request for review of the discretionary aspects of his sentence and consider the merits of his claim. In doing so, we are mindful that,

> [t]he imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Stewart*, 327 A.3d 301, 304 (Pa. Super. 2024).

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.
>
> Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration[, subject to the limitations set forth in 42 Pa.C.S. §§ 9771(b.1) (regarding nonpayment of fines or costs) and 9771(c) (limiting a sentence of total confinement for technical violations of probation)]. Upon revocation of probation … the trial court is [further] limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Commonwealth v. Colon*, 102 A.3d 1033, 1044 (Pa. Super. 2014) (quotations, citations, and brackets in original omitted).

In crafting a sentence, courts are directed to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Further, courts must also consider the resentencing guidelines when determining the appropriate sentence to impose after a revocation of probation. 204 Pa.Code § 307.2. Under 42 Pa.C.S. § 9771(c)(1)(i), the imposition of total confinement upon the revocation of probation is authorized when the defendant has been convicted of a new criminal offense. We also note "a trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then failed to adhere to the conditions imposed on him." *Commonwealth v. Pasture*, 107 A.3d 21, 28

(Pa. 2014). Additionally, in all cases where the trial court resentences an offender following revocation of probation, the trial court must place its reasons for the sentence on the record. 42 Pa.C.S. § 9721(b); **Commonwealth v. Cartrette**, 83 A.3d 1030, 1040-41 (Pa. Super. 2013) (*en banc*). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Crump**, 995 A.2d 1280, 1282–83 (Pa. Super. 2010).

Here, Appellant argues the trial court ignored evidence of mitigating factors and instead only focused on the seriousness of the violations. Appellant's Brief at 32. He stresses the trial court's Rule 1925(a) opinion and statement of reasons for sentencing at the **Gagnon II** hearing lack "**any** meaningful mention that [Appellant] had successfully completed [BIP], had numerous, serious mental health issues, and had been in jail pending his **Gagnon II** hearing for over a year." **Id.** at 30 (emphasis in original). Appellant argues "the trial court was committed to sentencing [him] to state prison, regardless of whatever evidence of mitigation and rehabilitation he presented." **Id.** at 30-31. In support of this contention, Appellant points to the trial court's comment during Appellant's probation violation hearing on February 2, 2024, at which time the trial court stated:

[Appellant] knew exactly what was going to happen if there was a violation of the no[-]contact order. When I see a violation of the PFA, that is a clear violation of my no[-]contact order. We will be getting a [PSI] and you, sir, will be serving time in state prison.

N.T. Probation Violation Hearing, 2/2/24, at 5.

A thorough review of the record reveals the court was aware of and considered Appellant's personal history, character, and treatment and rehabilitative needs. Notably, the court had and reviewed a PSI. Thus, we "presume[] the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa. Super. 2022) (internal quotation marks omitted). Additionally, prior to resentencing Appellant, the trial court set forth its reasoning as follows:

Everybody was … thinking that you spent two years in the Allegheny County Jail over the course of the pandemic, during the worst possible time that you could be incarcerated. And so I think everybody was thinking that you would learn something from that and you were going to stay away from [the victim], you were going to do your treatment and that was the whole idea behind giving you probation[:] … to allow you the opportunity to get drug and alcohol and mental health treatment and to take care of yourself in the community so that you would never return to the Allegheny County Jail again.

Instead, I have this litany of cases, you know, and the things that are most concerning to me are [your] having an ICC involving the same victim, and that was a conviction on that ICC and you served a sentence on that ICC against the same exact victim that I specifically told you to have no contact with. Not only is that disturbing enough, after a history where I have from my notes from the original sentencing that you had eleven ICC[]s from 2016 up until the point of that other case. So, you know, you had already been violating PFA after PFA after PFA after the ICC sentence. That was all taken into consideration at the time of the original sentence when we decided to give you a break and give

[you] an opportunity to take care of [your]self and do the right thing.

Instead[,] what I get is yet another ICC involving the same victim as well as that violation of my no[-]contact order. But to make it even more frightening[,] … we have the case at 2024-4898 which was originally charged as sale or transfer of firearms, you were attempting to purchase a firearm. That was pled down by the District Attorney's office to a misdemeanor two instead of that felony three. But the facts of the case remain[,] and the facts of the case are … a person who we are already having issues with PFA[]s, with ICC[]s, with violation of no[-]contact orders, you're trying to buy a gun, which makes things even more frightening for me.

N.T. Resentencing, 1/31/25, at 19-21.

Further, in its Rule 1925(a) opinion, the trial court explained its reasoning for Appellant's sentence as follows:

In sentencing … [Appellant] to a lengthy period of incarceration, [the trial] court considered the [Section] 9721(b) factors when determining what was an appropriate revocation sentence in this case[. I]t simply disagreed with the amount of weight to assign to any mitigating factors, particularly since … [Appellant]'s original sentence was intentionally crafted to address his personal background, history, characteristics, and rehabilitative needs.

It was … [Appellant] who failed to take advantage of the opportunity that he received at the time of his original sentencing for his crimes of Stalking, Criminal Trespass, and Simple Assault in 2023. Since that time, … [Appellant] failed in every way to meaningfully address his rehabilitative needs and lead a law-abiding life. Instead, he demonstrated a complete and total disregard for the law by violating multiple court orders and committing new offenses, demonstrating that he was entirely not amenable to community supervision and that he is a danger to [the victim] and the public at large.

***

In resentencing … [Appellant,] the court set forth its justification on the record which clearly evinced its consideration of all relevant statutory factors. Contrary to … [Appellant]'s assertions, the

- 10 -

revocation sentence imposed did not focus solely on one factor at the expense of others, and the court reimposed conditions requiring … [Appellant] to continue to undergo drug and alcohol and mental health evaluations and recommended treatment, thereby accounting for any rehabilitative needs.

The [trial] court notes … [Appellant]'s original sentence also accounted for his personal background, history[,] and characteristics when it imposed court-ordered treatment. However, … [Appellant] committed his ICC violation in October … 2023[,] while actively enrolled in the BIP classes, showing that he is, once again, either unwilling or unable to benefit from any classes or treatment based on his years-long history of non-compliance.

TCO at 11, 14-15 (citations to the record omitted).

Therefore, it is clear from the record the court considered Appellant's personal history, character, and rehabilitation and treatment needs. *See also* N.T. Resentencing at 15 (the court's listening to defense counsel regarding Appellant's completion of BIP); *id.* at 16 (the court's hearing defense counsel discuss Appellant's mental health needs and period of incarceration awaiting revocation). The trial court addressed the rehabilitative needs of Appellant by noting his "continued inability to stay away from [the victim], despite PFA[]s, despite ICC[]s, and despite a very, very clear and distinct no-contact order." *Id.* at 23. The trial court also addressed Appellant's treatment needs by again ordering drug and alcohol treatment, as well as mental health treatment. *Id.* at 29. However, it is also clear the court found the aggravating factors of Appellant's case outweighed the mitigating ones. *See also id.* at 19-20 (the court's expressing disappointment that Appellant violated probation by breaking a no-contact order and committing subsequent crimes when he was

previously given a chance at less restrictive punishments); *id.* at 17, 21-22 (Appellant's denying culpability regarding the violation of the no-contact order during allocution, as well as arguing with and interrupting the trial court).

Based upon all the evidence before it, the court imposed an aggregate sentence of 44 to 88 months' incarceration followed by 6½ years' probation, a permissible sentence under Section 9771(c)(1)(i) due to Appellant's four conviction-based violations. The sentence also falls within the maximums available at Appellant's original sentencing. We conclude the record supports the sentencing court's reasoning and that its decision conforms to the applicable law. As such, we discern no abuse of discretion, as Appellant has not established "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will," or "arrived at a manifestly unreasonable decision." *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).[3] As the trial court noted in its opinion, it is apparent the gist of Appellant's argument is not that the court failed to **consider** mitigating factors, but rather that the court **weighed** those factors

_____

[3] To the extent Appellant contends the trial court was committed to sending him to state prison regardless of any mitigation based on the court's comment at the February 2, 2024 probation violation hearing, our review, set forth *supra*, demonstrates that at the time of Appellant's resentencing, the court considered all the appropriate sentencing factors. Further, we note Appellant was also warned five times during his original sentencing that a violation of the no-contact order would result in revocation and likely a state prison sentence. **See** N.T. Sentencing, 6/1/23, at 41-42, 45, 48-49. Not only did Appellant violate the no-contact order despite the court's warning, but he committed three additional unrelated offenses while under supervision.

differently than Appellant desired. However, "the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Velez*, 273 A.3d at 10 (citation omitted). Additionally, determining the weight of the factors in Section 9721 is "exclusively for the sentencing court, and an appellate court [cannot] substitute its own weighing of those factors." *Commonwealth v. Bowen*, 975 A.2d 1120, 1123 (Pa. Super. 2009) (citing *Commonwealth v. Walls*, 926 A.2d 957, 966 (Pa. 2007)).

For these reasons, we deem Appellant's issues meritless and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/9/2026